PIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF GEORGIA
ATLANTA DIVISON

CLEMENT CRADDOCK, Jr.,
                    **Plaintiff,**        **CIVIL ACTION NO. _____**

vs.

XAVIER BECERRA,

IN HIS OFFICIAL CAPACITY AS

SECRETARY OF U.S. DEPARTMENT

OF HEALTH AND HUMAN SERVICES, and the

U.S. Department of Health and Human Services,


        **&**

SHERRI A. BERGER, MSPH,

IN HER OFFICIAL CAPACITY AS

CHIEF OF STAFF of the

CENTERS FOR DISEASE

CONTROL AND PREVENTION, and

The Centers for Disease Control and Protection,
        **&**

UNITED STATES OF AMERICA,
                    **Defendants.**


## COMPLAINT


Plaintiff Clement Craddock, Jr. ("Craddock") files this Complaint against

Xavier Becerra, in his official capacity as Secretary of the U.S. Department of

Health and Human Services, Sherri Berger, MSPH, in her official capacity as Chief of Staff of the Centers for Disease Control, and the United States of America, showing the Court as follows:

1.

Plaintiff Clement Craddock, Jr., ("Craddock") is a natural person and a resident of the State of Georgia.

2.

Craddock was an employee of the Centers for Disease Control and Prevention ("CDC"). During the time period at issue, Craddock worked for the CDC as a Lead Safety and Occupational Health Manager, GS-0018-14.

3.

Defendant Secretary Xavier Becerra is the official Agency head of the U.S. Department of Health and Human Services (HHS). Becerra is sued in his official capacity, and he is subject to the jurisdiction of this Court, and HHS is subject to the jurisdiction of this Court.   Becerra and HHS will be served in this action pursuant to FRCP 4(i)(2).

4.

Defendant Sherri A. Berger, MSPH, is the Chief of Staff of the CDC and is the agency head responsible for the challenged agency action. She is sued in her official capacity, and she is subject to the jurisdiction of this Court, and CDC is

subject to the jurisdiction of this Court. Berger and CDC will be served in this action pursuant to FRCP 4(i)(2).

6.

The United States of America is subject to the jurisdiction of this Court and will be served in this action pursuant to FRCP 4(i)(1).

7.

Under applicable federal procedure, this action is de novo and Craddock is entitled to discovery as in any other case filed in this Court, and to a decision on the merits of his case from this Court apart from the decision(s) of the EEOC.

8.

Defendant CDC is an agency of the United States located within HHS and headquartered in Atlanta, Georgia.  Craddock was employed by the CDC in Atlanta and resides in this district. In addition, a substantial part of the events or omissions giving rise to this action occurred in this District. Therefore, venue is proper in this District pursuant to 28 USC 1391(e).

9.

Craddock worked with the CDC in its Office of Safety, Security, and Asset Management (OSSAM) in Atlanta, Georgia, until he retired on December 31, 2018, under circumstances so hostile given Craddock's disabilities and rights to

reasonable accommodations  that he felt forced to retire. Craddock's departure from his job at CDC was in his belief a constructive discharge.

10.

Craddock filed an EEOC Complaint on May 4, 2018. alleging that the CDC had discriminated against him on the bases of race, sex, religion, color and disability, and that the CDC retaliated against him in response to his Complaints and in response to his opposition to the CDC's actions against him.

11.

The "Agency" subject to Craddock's EEOC Complaint was HHS and its division, CDC. The Agency conducted an investigation of Craddock's EEOC complaint.

12.

The Agency provided Craddock with a copy of the report of its investigation of Craddock's complaint and gave him notice of his right to request a hearing before an EEOC Administrative Judge.

13.

Craddock timely requested a hearing.

14.

The Administrative Judge that was assigned Craddock's case in response to the Craddock's request for a hearing did not notify the parties of the right to

seek discovery in the form of interrogatories, depositions, stipulations or production of documents, as required by 29 CFR 1614.109(d).

15.

Instead, once assigned the Craddock case, the Administrative Judge sua sponte notified the parties that his intent was not to conduct/provide/allow the hearing. The AJ denied the hearing sua sponte.

16.

The Agency submitted a motion supporting the AJ's sua sponte denial of a hearing.

17.

Craddock notified the AJ that Craddock opposed the issuance of a decision without a hearing.

18.

Particularly as a federal employee, Craddock had a Constitutional right to due process of law when the Agency, the AJ considered his discrimination and retaliation claims.

19.

Craddock had a property interest in his employment (at-will or otherwise). This property interest in his at-will employment is recognized both under federal

law, Truax v. Raich, 239 U.S. 33, 37-38 (1915), and state law, Ott v. Gandy, 66 Ga. App. 684 (1942).

20.

In addition, because 5 U.S.C 7512 generally requires cause for the taking of adverse actions against a federal employee, Craddock had a property interest in his employment with the CDC.

21.

Because Craddock possessed this property interest in his employment, that property interest could not be taken away without due process, as required by the 5th Amendment to the United States Constitution., which provides in part that "No person…shall…deprived of…property, without due process of law…"

22.

During the CDC's investigation of Craddock's complaint, CDC had employees answer questions based on a standard questionnaire that was very general, and then created "affidavits" based on the responses to the questions, which were basically denials of wrongdoing delivered in a very suggestive format.

23.

Craddock was not allowed to obtain discovery before the AJ before the AJ

on his own initiative short-circuited the process and declared that he was not

going to hold a hearing on Craddock's claim.

24.

Reviewing a record that consisted of the crude "affidavits" and Craddock's

complaint, and not informing Craddock he could take depositions of the Affiants,

the ALJ proceeded then to conclude that Craddock's claim could properly be

dismissed on summary judgment, applying an incorrect standard under which

Craddock had the burden without the benefit of deposition to establish disputed

facts which would support a finding that the Agency was motivated by

discriminatory animus.

25.

In making this ruling, the AJ disregarded Craddock's factual narrative and

instead accepted as undisputed direct denials of Craddock's claims of

discrimination by Responding Management official Kristie Singletary Meadows.

26.

Meadows in her statements made recitations such as Craddock's statement

about topics were "not true," she was recorded as denying she saw certain items,

and she "contended" that the facts were contrary to the facts Craddock offered.

27.

The agency submitted similar flat denials of Craddock's contentions by a

second RMO, Valerie Kokor.

28.

Kokor actually denied personal knowledge of the facts surrounding

Craddock's charges or even awareness of some of them.

29.

A third RMO, Darin Carroll, also supplied a response which was filled

with denials of awareness of the allegations, which of course clearly barred him

from eliminating any issue of fact about them.

30.

Carroll even turned the allegation that Meadows had pointed her finger at

Craddock in a demeaning discriminatory way into a claim that actually Meadows

felt threatened by Craddock, creating a huge issue of fact with his own words.

30.

Carroll also without personal knowledge stated that several things

Craddock alleged were "unlikely."

31.

In short, all the Affiants did was dispute Craddock's contentions, leaving

questions of fact that the Agency's presentation did not eliminate. .

33.

No reasonable AJ under the circumstances would have even considered the possibility that all of the facts in the record as to Craddock's case were undisputed. The record before the AJ showed that virtually everything in the case was disputed.

34.

Yet, the AJ on his own initiative declared in effect that he credited all of the Agency's denials and contra narratives to render the facts, despite Craddock's evidence undisputed. The Agency witnesses' lack of personal knowledge concerning some of Craddock's allegations was not considered by the AJ in reaching the decision that the facts were undisputed.

35.

The Agency's evidence, which had not been tested by Craddock in discovery because the AJ did not even notify Craddock that discovery was possible, still itself did not eliminate all issues of fact and show that the Agency was entitled to judgment as a matter of law.

36.

The AJ nonetheless issued the AJ's decision by summary judgment order in favor of the Agency on March 16, 2020.

37.

The Agency issued a Final Order on Craddock's Complaint on April 14, 2020, adopting the AJ's finding that Craddock failed to prove discrimination as alleged.

38.

Craddock timely appealed the April 14, 2020 CDC decision, and the EEOC Office of Federal Operations considered the appeal.  Director of the EEOC Office of Field Operations, Carlton M. Hadden affirmed the decision of the CDC on April 5, 2021, in a summary order reversing the burdens on motion for summary judgment.

39.

Hadden ruled that Craddock as Complainant on motion for summary judgment had the duty to come forward with disputed facts without the Agency's initial showing that the facts were undisputed in the record before the AJ, and that the Agency was entitled to judgment as a matter of law.

40.

None of the orders in the chain that ruled against Craddock recited the actual   facts that any of the deciders, the writers of the decisions, considered undisputed, as the basis for then ruling as a matter of law that Craddock's discrimination claims failed.

41.

It is reported that under Hadden, as Director of the EEOC Office of Field

Operations, discrimination by federal agencies is found in less than 3% of cases.

42.

A key driver of the dearth of findings of discrimination in federal agency

discrimination cases is that in many cases the employee is deprived of the ability

to conduct the employee's own investigation and obtain meaningful discovery, as

here.

43.

Craddock was denied the procedural due process he was entitled to receive

under the Fifth Amendment to the United States Constitution in having his

discrimination case considered and resolved.

44.

Specifically, Craddock was denied an opportunity to be heard after

receiving meaningful discovery, denied the ability to confront witnesses, denied a

hearing at all by the AJ, and denied an impartial tribunal.

46.

The Decision on Request for Reconsideration informed Craddock that he

has the right to file a civil action in an appropriate United States District Court

within 90 calendar days from the date he received the April 5, 2021 Decision, stating that it would be presumed was that the decision was received within five (5) calendar days. This meant that the Decision was deemed to have been received April 10, 2021.

47.

Craddock had 90 days after April 10, 2021 decision to file a civil action such as this one. The 90th day thereafter was July 9, 2021.  Craddock indeed filed suit regarding this decision on July 7, 2021 in this Court, and that case was assigned Case No. 1:21-cv-02726. Thus, Craddock complied with the 90-day filing requirement.

48.

Case number 1:21-cv-02726 was dismissed without prejudice because of service issues on February 10, 2022.   This is a renewal of that action in part.

## STATEMENT OF FACTS REGARDING MAY 4, 2018 COMPLAINT

49..

Craddock initially complained to the Centers for Disease Control and Prevention, Office of Equal Employment Opportunity on May 4, 2018 and alleged that the CDC discriminated against him based on race, sex, religion, color, disability, and age, and also retaliated against him because of his EEO complaints.

50.

The prohibited discrimination against, harassment of, and ongoing retaliation against Craddock by Meadows was exemplified by her failure to provide reasonable accommodations to Craddock even though he is a person with a Disability in accordance with the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

51.

On October 4, 2017, the CDC Medical Reviewing Authority (MRA) confirmed Craddock's disability, and also recommended that Craddock be allowed to receive the accommodation of telework five days a week, or that he be relocated out of his office.

52.

Those accommodations were not provided and on November 21, 2017, Jamie Darling Hall, M.Ed.,LPC, NCC issued a report confirming the **severity** of Craddock's disability and requesting an **immediate** change in his current accommodations.

53.

Grudgingly, and after an ugly confrontation with Craddock and a Union Representative which was followed by Meadows slamming a door in Craddock's

face, in December 2017 Meadows allowed Craddock to go on a four day telework schedule.

54.

Meadows actually openly resisted the participation of the Union Representative in the meeting with Craddock, and Meadows got angry at the fact that Craddock had Union Representation.

55.

In retaliation for Craddock's persistence in seeking his accommodations, and for Craddock's having brought the union representative to the meeting, Meadows punished Craddock by demanding from him the preparation of an Excel Spreadsheet confirming all the projects he had worked on in 2017, a report she required from no other comparable employee. She gave him the assignment on the day before Thanksgiving, demanding it be delivered the day after Thanksgiving, in obvious retaliation.

56.

Meadows retaliated further by forbidding Craddock's use of a hearing aid he required to participate in meetings, despite the Reasonable Accommodation Provider already having approved it.

57.

Meadows and others gave Craddock a score of 2.8 on his evaluation as of February 5, 2018, thereby depriving him of a pay increase, specifically and intentionally giving him a low but false score on a particular part of the evaluation, with express intent to cause a numerical downgrade.

58.

Craddock had arranged to go on a cruise beginning February 20, 2018, and had approved leave to do so, but Meadows vindictively threatened Craddock about doing so with a project he had still pending. This landed Craddock in the emergency room on February 17, 2018.

59.

Meadows thereafter admitted she was aware of Craddock's disability, and Meadows attempted to justify her behavior by falsely claiming it was temporary.

60.

Meadows also admitted that she did violate Craddock's approved accommodation of wearing the hearing aid in meetings, choosing to order him not to do so because the hearing aid made recordings and she deemed that to cause discomfort in other participants.

61.

Meadows anchored much of her adversarial and retaliatory behavior against Craddock with black man stereotypes, such as the black man was threatening me, I

wasn't threatening the black man, in fact the black man was very threatening; the black man had poor judgment in bringing the union man to our meeting; the black man wasn't sufficiently subordinate; and it was the black man's fault that he didn't understand my instructions.

62.

Kokor joined with Meadows in denying to Craddock the ability to use his approved hearing aid in meetings, and corroborated Meadows's story over Craddock's despite the fact that she had no personal knowledge about several of the situations at issue.

63.

Carroll likewise joined in to deny Craddock the use of the hearing aid in meetings.

64.

Meadows, Kokor, and Carroll did not trust Craddock to have a device recording the meetings because he was a black, non-team player in the workplace in their eyes.

65.

Carroll vigorously defended the 2.8 evaluation given to Craddock, claiming untruthfully that the rating, which was a judgment that the employee is not

performing his job adequately, was supported by documentation and was thus justified.

66.

Craddock continued to work in this hostile environment with Meadows and Carroll openly holding out their decree that   Craddock's performance was inadequate, until, given the unique mental and physical challenges Craddock faced, he began to fear that he would be fired before he could retire. Therefore, he retired effective December 31, 2018.

67.

Craddock's fear was justified given Meadows' past treatment of Craddock. Meadows had in the past forced Craddock to conduct office safety inspections that involved very physical activity such as moving equipment, climbing up ladders etc. despite his known physical limitations and despite the fact that office safety inspections were generally performed by employees at a lower GS level than Craddock.

68.

The CDC had previously made a specific decision to demote Craddock and to accuse him in connection with the demotion of not performing duties which had been assigned, not having people to supervise to "justify" his supervisory

designation, and not being charged with "emergency response coordination" in fact, although that was one of his designated duties.

69.

Therefore, Carroll and Meadows had put Craddock on unjustified performance plans on January 31, 2017, and July 27, 2017; Carroll pointedly told Craddock that Carroll had experience firing an employee at Craddock's level before, saying he would do it again; and the CDC demoted Craddock.

70.

The CDC also denied Craddock  an office and special office furniture he needed as  part of the reasonable accommodations to which he was entitled; and moved him from the main CDC Emory Campus to the Chamblee office, with limited duties, as a way of diminishing his standing as a black man with a title at CDC.

71.

These actions had been the subject of another EEOC claim Craddock had filed against the Agency on October 13, 2016.

72.

The ongoing EEOC claim colored all of the CDC's actions against Craddock after it was filed.

73.

Ultimately, this claim was also rejected by the EEOC ffice of Federal Operations. First, the Agency ruled against Craddock on January 30, 2020. Craddock appealed and Hadden entered an Order affirming on October 14, 2020. Craddock moved for reconsideration and The Motion for Reconsideration was denied on February 9, 2021.

74.

Craddock was deemed to have received the Decision on Motion for Reconsideration on February 16, 2021, and timely filed an action in this Court which was assigned Civil Action No. 1:21-cv-2069 in this Court. This case is a renewal of that action.

75.

The prior demotion, Meadows' threats,  the unjustified imposition of performance plans on Craddock, the denial of  his step pay increase, the slammed doors in his face, the intentionally inconvenient assignments around holidays such as Thanksgiving, the  intentional disregarding Craddock's requests for leave, the intentional assignment of work to Craddock not appropriate for a GS-14 which was inappropriate for a worker with his physical limitations,  and the unrelenting  spats regarding Craddock's work and use of leave time  put Craddock in a position where he first had to take FMLA leave,  and second, had  to retire to avoid being fired.

76.

The CDC marginalized Craddock for the specific purpose of justifying the hidden fait accompli it was planning, that Craddock would be forced to retire.

77.

The CDC discriminated against Craddock because of his race, his age, his sex, and his disability, in effect castrating him, and leaving him impotent in the organization, to accomplish its goal to force Craddock to retire--- for the purpose of replacing him with someone of the age, sex, race, and non-disabled status required, a younger white woman.

78.

The CDC acted with specific intent to harm Craddock, by denying him the reasonable accommodations he was entitled to in his job, by publicly shaming him as a black man when they wanted him out, and by retaliating against Craddock when they decided they did not want to bother with providing the legally required accommodations, regardless of his protestations.

## COUNT ONE: DENIAL OF PROPERTY WITHOUT DUE PROCESS AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

79.

Craddock was denied due process in the consideration of his May 4, 2018

claims against the CDC, when the AJ sua sponte decided not to hold a hearing on

the case and did not make discovery readily available to Craddock so that he could

meaningfully contest the Agency's position.

80.

Craddock suffered damages because of Defendants' denial of his due

process rights for which Defendants are liable, in an amount to be determined by

the jury.

## COUNT TWO: VIOLATIONS OF TITLE VII: 42 U.S.C. 2000e

81.

Bostock v. Clayton County makes the question of whether Title VII is

violated very easy. Would the decision have been different had Craddock been

other than black? The obvious answer to this question is of course.

82.

Bostock v. Clayton County is focused totally on the complaining

individual—in relation to the individual Plaintiff's claim of discrimination, his

membership in the protected class such as race, or color, or sex only has to be a

motivating factor, one "but for" cause  for the adverse employment decision(s)  in order to be actionable as a Title VII violation.

83.

As to Craddock, the CDC's decisions had as a but for factor his race, color and sex. He was discriminated against in favor of white people, and women. He was displaced by white women and white men, and actually was not even considered as a possible manager over the new the Quality and Compliance Branch.

84.

Craddock suffered actionable adverse employment actions as described above before he retired; and he retired under circumstances constituting constructive discharge.

85.

Accordingly, Craddock is entitled to all the relief Title VII provides to him against the CDC.

## COUNT THREE: VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

86.

Again, as provided in Bostock, a motivating factor for, if not a but for cause of, the adverse employment actions Craddock suffered was his age, as he was in the protected class under the ADEA being over 40. People under 40 were favored over Craddock because they were younger, and therefore Craddock is entitled to all the relief the ADEA provides to him against the CDC.

## COUNT FOUR : VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT.

87.

Again, as provided in Bostock, a motivating factor for, if not a but for cause of, the adverse employment actions Craddock suffered was his numerous disabilities which the CDC was already obligated to provide accommodations for.

88.

Craddock was in the protected class under the ADA being disabled and entitled to reasonable accommodations. People not disabled were favored over Craddock because they did not require reasonable accommodations, and therefore Craddock is entitled to all the relief the ADA provides to him against the Defendants.

## COUNT FIVE: VIOLATION OF FREE SPEECH RIGHTS

89.

Craddock received adverse employment actions because he spoke out against the racism, sexism, ageism and disability discrimination practiced by the CDC generally—apart from his own victimhood.

90.

Defendants violated 42 USC 1981 and Plaintiff's First Amendment Rights under the U.S Constitution, in so doing, and therefore Craddock is entitled to recover damages from Defendants.

## COUNT SIX —VIOLATION OF 42 U.S.C 1981

91.

Because Defendants engaged in unlawful discrimination against Craddock on account of his race, they are liable to Craddock under 42 U.S.C. 1981, for all

damages permissible against Defendants under  42 U.S.C. 1981a and other applicable law.


WHEREFORE, Craddock prays that the court grant him a judgment against Defendants including  as follows:

1.  A judgment for Craddock against Defendants for all compensatory damages recoverable under the various statutes Defendants violated, and for the Constitutional violations Defendants committed ;

2. A judgment for Craddock against Defendants for reasonable attorneys' fees as available under the various statutes to be to be determined under applicable procedure;

5.Such other and further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 13th day of April , 2022.

**DALZIEL LAW FIRM**

s/ *Charles M. Dalziel, Jr.*

Charles M. Dalziel, Jr.

Georgia Bar No. 203730

31 Atlanta Street Suite 200

Marietta GA 30060

(404) 735-0438

chuck@dalziellawfirm.com

Attorney for Plaintiff